IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TODD A. BURGER, )
 )
    Plaintiff, )
 )
v. ) Case No. CIV-13-0062-F
 )
CAROLYN W. COLVIN,[1] )
Commissioner, Social Security )
Administration, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Todd A. Burger (Plaintiff) has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental income payments[2] under the Social Security Act. United States District Stephen P. Friot referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

[2] Plaintiff's brief in chief indicates his application was for disability insurance benefits. Doc. 11, at 1.

remanded.

## I. Administrative proceedings.

In support of his application for benefits that he filed on July 22, 2009, Plaintiff alleged that his depression, arthritis in his spine/neck, right-eye vision loss, and asthma became disabling as of that date.[3] AR 141-46, 180. After the Social Security Administration denied his claim, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 41-68. At that June 21, 2012 hearing, Plaintiff and a Vocational Expert testified. *Id.* at 45-68. In her August 29, 2012 decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 22, 2009, and has severe "disorders of back discogenic and degenerative, asthma, right eye problems, depression, and personality disorder (20 CFR 416.920(c))." *Id.* at 24. The ALJ also found that Plaintiff has the residual functional capacity (RFC)[4] for light work, with various restrictions.[5] *Id.* at 30. The ALJ concluded that Plaintiff

---

[3] Originally Plaintiff stated a disability date as of July 1, 2005, but at the administrative hearing, he amended that date to July 22, 2009.

[4] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

[5] Specifically, the ALJ found that Plaintiff can (1) frequently lift-carry, push/pull 10 pounds, and occasionally lift/carry, push/pull 20 pounds, (2) could sit for 6 hours of an 8-hour workday, and stand for 6 hours of an 8-hour workday, (3) frequently climb stairs and ramps, kneel, crouch, crawl, and stoop but never climb ladders/ropes/scaffolds, or balance, (4) work

would be able to perform the job of a final inspector, hand bander, and as an office helper, and thus was not disabled within the meaning of the Social Security Act. *Id.* at 35-36. The Social Security Administration's Appeals Council declined Plaintiff's request for review. *Id.* at 1-6. Plaintiff, through counsel, seeks review of the Commissioner's final decision in this Court. Doc. 1.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328

---

with climate control and could have no concentrated exposure to fumes, odors, dusts, gases, (5) can perform simple tasks with routine supervision, (6) could have no public contact and perform no customer service, (7) can interact appropriately with supervisors and coworkers and a superficial work basis, and (8) could adapt to work situations. AR 30-31.

(10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

Plaintiff presents two claims of error on judicial review. First, he challenges the ALJ's credibility analysis. Second, he contends that the ALJ erred when she omitted his vision impairment in her RFC assessment.

### A. Standard of review.

This Court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists, the Court "will not reweigh the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Further, the harmless-error doctrine applies in social security cases "where,

4

based on the material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. Plaintiff's claims of error.

Plaintiff challenges the ALJ's credibility analysis and her RFC assessment. Because the undersigned recommends remand based on the ALJ's failure to properly take into account the impact of Plaintiff's vision impairments in the RFC, the undersigned will not address the credibility challenge. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### C. The ALJ failed to include any right-eye-vision-loss limitations in the RFC despite having specifically determined that Plaintiff's "right[-]eye problems" severely impaired him.

A September 2009 consultative physical examination established Plaintiff's right-eye vision to be 20/100. AR 29, 241-42. In his December 2009 eye exam at Dean A. McGee Eye Institute, the treating ophthalmologist noted "subretinal fluid in [Plaintiff's] right eye which was consistent choroidal

5

neovascular membrane [CVNM]." *Id.* at 28, 337.[6] During that examination, Plaintiff reported his right-eye vision to be "almost all black now." *Id.* at 338. Injections of Avastin were recommended. *Id.* at 337. At his February 2010 examination where he received an injection, Plaintiff reported his "center of vision" "OD"[7] missing. *Id.* at 336. He was assessed with CVNM OD that was "idiopathic" and "stable." *Id.* at 28, 335-36. In March 2010, he received further treatment, noting that his decreased right-eye vision was "affecting work" and causing "a lot" of headaches. *Id.* at 28, 334. His right-eye vision appeared to be 20/125, although the notes are difficult to decipher. *Id.* at 334. He received another Avastin injection on February 8, 2011. *Id.* at 28, 365. At that appointment, his visual acuity was listed as "stable" but his right-eye's central visual acuity "seems worse and had difficulty focusing." *Id.* at 28, 365. The report also indicates "CNVM OD" and 20/70 vision in his

---

[6] "Wet macular degeneration occurs when abnormal blood vessels grow under the retina. The blood vessels originate from the small blood vessels in . . . the choroid under the retina. This process is called *choroidal neovascularization (CNV).*" David S. Boyer, M.D., & Homayoun Tabandeh, M.D., Macular Degeneration, From Diagnosis to Treatment 6-11 (2012). "Choroidal neovascularization (CNV) frequently leads to severe and irreversible loss of central vision and is associated with age-related macular degeneration, ocular hisotplasmosis, and pathologic myopia, among others." D. Virgil Alfaro, III, *et al.,* Age-Related Macular Degeneration, A Comprehensive Textbook 264 (2006).

[7] "O.D." is an abbreviation from the Latin term, oculus dexter, meaning the patient's right eye. Stedman's Medical Dictionary 1357 (28th ed. 2006).

right eye. *Id.* at 365.

Plaintiff testified that he did not receive corrective lenses, and canceled an appointment due to sickness. *Id.* at 32. He reported that Dean McGee Eye Institute told him he was "going blind" in the center of his vision in his right eye. *Id.* at 57. He stated that his vision problems affected his near and distance vision, and he needs to hold onto something when going up and down. *Id.* at 57-58. He testified that he wears reading glasses so he "can see a little bit" on the computer or to help when he reads. *Id.* at 58. At the time of the hearing, Plaintiff was to reschedule his final Avastin injection. *Id.* at 28, 58.

The ALJ found Plaintiff's credibility diminished for several reasons. *Id.* at 33. She determined that "[t]he clinical findings do not substantially corroborate his subjective complaints." *Id.* In support, she noted Plaintiff "sought very little private medical treatment." *Id.* She also pointed to his failure to follow up with the recommended eye treatment, his noncompliance with medications, his continued employment as a referee, his playing and watching sports, and his travel to sporting events in Oklahoma. *Id.*

At the hearing, the ALJ asked the VE:

[A]ssume the hypothetical person is the same age, education and past relevant work as the claimant. For the first hypothetical they can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently . . . . They can stand and walk for six out of eight hours, they can sit for

six out of eight hours, no climb ladders, ropes or scaffolds and no balance. . . . [O]ccasional stoop, frequent climb stairs and ramps, kneel, couch and crawl, climate controlled, no concentrated exposure to fumes, odors, dust and gases . . . . simple tasks with routine supervision, no public contact, no customer service, able to interact appropriately with supervisors and co-workers on a superficial work basis, able to adapt to work situations. . . .

*Id.* at 65-66. The VE recommended a job as a final inspector, a hand bander, and as an office helper. As the Commissioner points out, each of these positions states that "near acuity" is "frequently present." Doc. 12, at 14; Dictionary of Occupational Titles (DOT) 727.687-054, DOT 920.687-026, DOT 239.567-010.

Plaintiff asserts that the ALJ's hypothetical questions used to elicit the VE's testimony failed to reflect with precision Plaintiff's impairments. Doc. 11, at 9 (citing *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)).[8] The Commissioner responds that "there is no merit to Plaintiff's assertion that the ALJ should include more restrictions related to his right-eye problem." Doc. 12, at 12. The Commissioner maintains that Plaintiff's eyesight improved with treatment, that he could read well with reading glasses, and that any fluid in his right eye was "only minimal fluid centrally." *Id.* (citing AR 365). The undersigned disagrees with the Commissioner and notes that the ALJ

---

[8] Though Plaintiff cites the Eighth Circuit, the Tenth Circuit has published caselaw holding the same. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

made none of these findings.

So long as a claimant is not legally blind, the Commissioner evaluates visual impairments the same as any other impairment in determining disability. See 20 C.F.R. § 416.985. "Visual impairments are nonexertional impairments [that] must be considered in determining a claimant's RFC." *Mose v. Apfel*, No. 98-7183, 1999 WL 1063829, at *3 (10th Cir. Nov. 23, 1999) (unpublished op.); s*ee* 20 C.F.R. § 416.945(d); *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 n.3 (10th Cir. 1992). Plaintiff's vision clearly was impaired to some degree — the uncontroverted record evidence establishes Plaintiff was assessed with subretinal fluid in his right eye, consistent with CVNM, AR 337, a form of macular degeneration that can lead to irreversible central vision loss. *See* Alfaro, III, *et al.*, *supra* n.6, at 264. Plaintiff has consistently indicated that his vision loss has affected his ability to work — a fact the ALJ acknowledged, finding Plaintiff's right-eye problems severely impaired his ability to perform basic work activities. AR 24. And she noted that Plaintiff's medical history is "positive" for "decreased eye vision." *Id.* at 34.

When completing the first part of the step four analysis — assessing plaintiff's RFC — the ALJ completely failed to consider or include any limitation relating to Plaintiff's vision loss. Nor did she give any reason why

she decided not to include any such limitation. So, she inadequately evaluated the effect of his vision loss on his ability to work. The Tenth Circuit has held before that the failure "to consider plaintiff's vision loss in conducting the step four inquiry . . . alone, would be grounds for reversal." *Washington v. Shalala,* 37 F.3d 1437, 1440 (10th Cir. 1994) (where Plaintiff "had impaired vision in his left eye"); s*ee also Mose*, 1999 WL 1063829, at *3.

And, the ALJ's hypothetical did not include Plaintiff's vision-loss impairments. So, the VE's answers, offering three different jobs that Plaintiff could still perform in the national economy gave no consideration to his vision loss. Each of the three jobs unquestionably requires frequent near visual acuity. So the error cannot be harmless.

### VII. Recommendation and notice of right to object.

For the reasons discussed above, it is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings.

The parties are advised of their right to object to this Report and Recommendation by the 5th day of February, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained

herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 16th day of January, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE